**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KARL EVAUGHN NORVELL,** | § | |
| | § | |
| **v.** | § | **NO.  A-05-CA-613 SS** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

<u>**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

TO:   THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Motion for Summary Judgment (Clerk's Doc. No. 14); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 17); Plaintiff's Reply (Clerk's Doc. No. 18); and the Social Security Record filed in this case (Cited as "Tr."). The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. PROCEDURAL HISTORY**

Plaintiff Karl Evaughn Norvell ("Plaintiff") applied for Disability Insurance Benefits and Supplemental Security Income payments on July 9, 2003.  He was denied benefits initially and again upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 14, 2004.  The ALJ denied Plaintiff benefits in a decision issued January 13, 2005.  Plaintiff appealed this decision to the Appeals Council, and submitted additional evidence for review.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June

3, 2005. On August 16, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II. ISSUES PRESENTED

Plaintiff raises the following issues: 1) whether substantial evidence in the record supports the Commissioner's finding that Plaintiff's impairments do not meet or medically equal one of the listed impairments in the Listings of Appendix 1, Subpart P of 20 C.F.R. § 404; 2) whether there is substantial evidence in the record supporting the Commissioner's assessment of Plaintiff's ability to engage in substantial gainful activity; and 3) whether the ALJ properly evaluated Plaintiff's credibility pursuant to Social Security Ruling 96-7p.

## III. STATEMENT OF THE CASE

At the time of the October 14, 2004, administrative hearing, Plaintiff was 44 years old with a tenth grade education. Plaintiff complained that he was unable to engage in substantial work activity due to depression. Plaintiff was represented at the hearing.

### A.    Plaintiff's Testimony

Plaintiff testified at the hearing that he was born on November 27, 1960. Tr. 255. He testified that his formal education is limited to the tenth grade. Tr. 255. Plaintiff stated that he could "kind of" read and write the English language and that he could not read a newspaper, but further questioning from the ALJ showed that he could read the "Notice of Hearing" sent to him by the Social Security Administration, including the sentence "complete enclosed form." Tr. 256. Plaintiff also exhibited that he could add and subtract. Tr. 258

Plaintiff testified that in the past he had been employed as a construction worker, a mason's helper, a labor foreman, and a forklift operator for Whole Foods. Tr. 259- 261. Plaintiff explained that he was laid off from his job as a mason's helper/labor foreman and not called back because he filed for unemployment. Tr. 262. Plaintiff further explained he was terminated from his job at Whole Foods for being written up three times. Tr. 263. Plaintiff testified that after he was terminated from Whole Foods he worked as a laborer, that his last job had been in April of 2003, and that at the time of the hearing he was not working. Tr. 263.

Plaintiff testified that he was on probation for assault in 2002 or 2003, and that he tested positive for drugs in a urinalysis. Tr. 264-266. Plaintiff went through an alcohol treatment program in October of 2003. Tr. 267. Plaintiff remembered that he had served a sentence at the Del Valle Correctional Facility, but claimed he could not recall when or why, but apparently his probation was revoked. Tr. 267. Plaintiff claimed he had been clean and sober since Labor Day 2003. Tr. 268.

Plaintiff testified that he was still depressed at the time of the hearing. Tr. 268. He claimed that he had problems sleeping and that he suffered from anxiety. Tr. 269. Plaintiff also claimed that he hears voices that tell him to "run." Tr. 269. Plaintiff testified that when he takes his medication the voices go away, he is less depressed, and that he is less anxious. Tr. 270.

With regard to his medications, Plaintiff stated that he had not been to MHMR to get his medications since January, because he had lost his wallet and became frustrated with the procedures required to replace his pharmacy card. Tr. 271. He also testified that "the day that I was supposed to go to the appointment I forgot." Tr. 271. Plaintiff testified that he ran out of his prescription in March, two months after he was released from jail. Tr. 271. Plaintiff testified that he has not sought treatment for any conditions other than depression. Tr. 272-272, 278.

3

Upon examination by his representative, Plaintiff testified that he worked digging cable for a Southwestern Bell contractor, in April of 2004.  Tr.  278-279.  Plaintiff testified that he worked part-time at this position for two months.  Tr.  280.  He was terminated for arguing with a supervisor.  Tr.  281.  Plaintiff stated that at this time he was not taking any medication.  Tr.  281.

Plaintiff testified that he does not attend movies, and had not been fishing with friends for two months.  Tr.  282.  Plaintiff testified that he has dreams where "I'm fighting in my sleep, and kicking" and that these dreams decreased while he was on his medication.  Tr.  282.  Plaintiff testified that he had not sought help seeking employment from either the Texas Workforce Commission or Texas Rehabilitation Commission since they helped him find the job with the Southwestern Bell contractor.  Tr.  283.

Plaintiff stated that he refused to eat for eight days while at Del Valle, and that he was placed in the medical ward and prescribed Thorazine.  Tr.  283.  He testified that he slept normally while taking the medication.  Tr.  284.  Plaintiff testified that his cell at Del Valle made him claustrophobic and that he prefers to work outside.   Tr.  284.

Plaintiff testified that he could not drive a forklift because "my judgment ain't good anymore."  Tr.  272.  He also stated that his medication made him sleepy.  *Id.*  When the ALJ pointed out that Plaintiff's medications had been mixed up, Plaintiff testified that the incorrect medication (Seroquel) made him sleepy.  Tr.  273.

Plaintiff testified that he lived with his brother and brother's wife.  He stated that he cannot sleep at night, but sleeps during the day from 6 a.m. to 3 p.m. Tr.  273.  Plaintiff stated that he would then fix himself breakfast and watch television.  Tr.  274.  He also stated that he sometimes washes

4

the dishes. Tr. 277. Plaintiff testified that he watches television all night until he goes to sleep in the morning. Tr. 277.

Plaintiff testified that he never sought treatment for pain in his back and shoulders, although he had a Medicaid card. Tr. 278. Plaintiff testified that he had been depressed on and off for most of his life, but did not seek treatment. Tr. 286. Plaintiff testified that his depression medication made him too sleepy to work during the day. Tr. 287.

Upon questioning by his representative, Plaintiff stated that he could not handle an eight-hour factory job because "I would hurt myself or someone else" by hitting himself with a hammer. Tr. 290.

**B.      Vocational Expert Testimony**

Terry L. Vander-Molen, Ph.D, a vocational expert ("VE") also testified at the hearing. Tr. 292-295. Dr. Vander-Molen classified Plaintiff's former work as both "construction worker I," which he characterized as very heavy and unskilled with an SVP of 2; and "construction worker II," which is heavy and semi-skilled with an SVP of 4 (Plaintiff's masonry work would fall mostly in this category). Dr. Vander-Molen rated Plaintiff's work building scaffolding and forms as a rough carpenter, rated as heavy with a SVP of 7. Tr. 293. Dr. Vander-Molen described Plaintiff's position with Whole Foods as a forklift operator, which is medium, semi-skilled, with an SVP of 3. Tr. 294.

**C.      Medical Records**

Plaintiff alleges he became disabled on April 4, 2003, due to depression. The following is a summary of Plaintiff's medical records that are relevant to the issues presented in the instant case:

Plaintiff has no history of psychiatric treatment until he contacted MHMR on June 12, 2003 (he applied for disability benefits in July of 2003). Tr. 123. On June 12, 2003, Plaintiff presented to MHMR complaining of depression. Tr. 138-146, 157-168. He reported to MHMR again in August,

5

again complaining of depression. Tr. 136-152.   Plaintiff was then prescribed Serzone to treat his depression. Tr. 148. Plaintiff entered Oak Springs Treatment Center for alcohol abuse on August 28, 2003. Tr. 138.  He was again prescribed Serzone on September 11, 2003, Tr. 134, and on October 9, 2003, 131. He was successfully discharged on October 7, 2003.  Tr. 132.  On December 15, 2003, Plaintiff was prescribed Seroquel, because he "preferred the Seroquel effect." Tr. 130.

It is unclear from the medical records, but apparently Plaintiff was incarcerated beginning in November of 2003 when his parole was revoked.  Various records from the Del Valle Correctional Facility reflect that Plaintiff reported that he was depressed and was placed in open psychiatric housing.  Tr. 214. Jail records reflect Plaintiff was released in December 2003.

The medication records indicate that Plaintiff was prescribed Thorazine and Chlorpromazine while incarcerated. Tr. 219-220. Plaintiff requested Seroquel as that was what he was prescribed by MHMR. Tr. 224.   No other medical records exist for Plaintiff.

On August 21, 2003, a Functional Capacity Assessment was performed on Plaintiff.  Tr. 123. In that assessment, Dr. Charles Lankford determined that Plaintiff suffers from a depressive disorder, but he is not significantly limited in 12 out of 20 categories of mental activities and that Plaintiff is "moderately limited" in 8 areas.  His functional capacity assessment was that Plaintiff is "capable of understanding, recalling, and performing simple work, interacting appropriately with supervisors and co-workers, and adapting to changes in a routine work environment." Tr. 107.  Dr. Lankford ruled out the possibility that Plaintiff suffers from a psychotic disorder. Tr. 111.  Dr. Lankford determined that Plaintiff is mildly limited in the activities of daily living and in maintaining social functioning, that he is moderately limited in maintaining concentration, persistence, or pace and that he has suffered no episodes of decompensation.  Tr. 119.

Dr. Lankford also reported that Plaintiff stated to him that he cares for 14 children between the ages of 5 and 10, many of whom are his grandchildren, in his home. Tr. 123. Plaintiff reported to Dr. Lankford that he had an aggravated assault charge in 2001, and is currently on probation. Dr. Lankford observed that Plaintiff reported moderate anxiety and depression, but that his thought processes seemed normal, that his intellect was normal, that he had good impulse control, and that Plaintiff exhibited no bizarre behavior or self-neglect. *Id.* Dr. Lankford reported that Plaintiff had not returned to MHMR since his initial visit and had not started medication. Lastly Dr. Lankford stated that "alleged limitations due to symptoms are not fully supported by medical and other evidence." *Id.*

On August 13, 2003, Greg Maksymowicz, M.D., performed a mental status evaluation of Plaintiff. Tr. 124-127. Dr. Maksymowicz determined that although "this man has a somewhat confusing picture" Plaintiff suffers from a depressive disorder. Tr. 126.

## IV. FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Based upon the medical evidence, the ALJ determined that Plaintiff suffered from a mood disorder and drug and alcohol addiction. Tr. 17. The ALJ found these impairments to be severe but not severe enough to meet or medically equal any impairment on the Listing of Impairments in the Social Security Regulations.

The ALJ also found that the Plaintiff's allegations regarding his limitations were not credible, and that Plaintiff had no exertional limitations and retained the ability to perform work activity that does not require complex or detailed tasks. The ALJ found that Plaintiff's past work was not

7

precluded by his residual functional capacity and that his mood disorder and possible drug and alcohol addiction did not preclude Plaintiff from performing his past relevant work. Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Act.

## V. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI.  ANALYSIS

### A.    Was the ALJ's decision based upon substantial evidence?

Plaintiff first argues that the substantial evidence in the record did not support the ALJ's finding that Plaintiff's impairments do not meet or medically equal one of the impairments in the Listings of Appendix 1, Subpart P of 20 C.F.R. § 404.  Plaintiff argues that his depression qualifies as an affective disorder that meets the listing, and the ALJ erred when he found otherwise.

To determine disability, the Commissioner uses a five-step analysis.  The first two steps involve determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities.  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).  In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity.  *Id*.  If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry.  *Id*.

If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps.  *Id*.  At these steps, the analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of the claimant's age, education, and work experience.  *Id*.  If the claimant cannot do his past work or other work, the claimant qualifies for benefits.  *Id*.  The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step, if it is reached.  *Id*.  If at the fourth step, the ALJ determines that the claimant is capable of doing his past relevant work, there is no disability.  *See* 20 C.F.R. § 404.1520; *Frazier v. Chater*, 903 F.Supp. 1030, 1034 (N.D. Tex. 1995).

The ALJ found Plaintiff not disabled based on the fourth step. The ALJ determined that Plaintiff was able to perform his past relevant work as construction worker and forklift operator. The Court finds that based upon the evidence in the record before the ALJ, that the ALJ's determination was based upon substantial evidence.

### *1. Plaintiff's medically determinable impairments*

Plaintiff asserts that the ALJ erroneously assessed his medically determinable impairments because Plaintiff in fact suffered from "severe mental illness since on or before April 2, 2003." Plaintiff's Brief at p. 6. In support of this argument, Plaintiff relies upon the findings of Dr. Greg Maksymowicz, made on August 11, 2003. Tr. 125. Plaintiff cites that Dr. Maksymowicz diagnosed Plaintiff with Depressive Disorder, ruling out Psychotic Disorder, assessed a GAF of 45 and found that Plaintiff's prognosis was "poor to fair." Tr. 126. Plaintiff argues that Dr. Maksymowicz's diagnosis, along with Plaintiff's reports to him that he suffered from insomnia, decreased appetite, crying spells, felt like giving up, and reported hallucinations and paranoid ideations, qualified to meet the listing of an "Affective Disorder" found at 12.04. Plaintiff's argument is that he in fact met the A, B, and C criteria of listing 12.04.

The Court finds that the ALJ did not err when he found that Plaintiff's impairment did not satisfy the criteria for 12.04 of the listing of impairments. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir.2000) (citation omitted). "[C]onflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ." *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir.1985)

Plaintiff argues that he met the requirements for a listed impairment, specifically, an Affective Disorder under listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.04. "[T]he required level of severity [for listing 12.04] is met when the requirements in both [subsections] A and B are satisfied" or the requirements of subsection C are satisfied. *Boyd v. Apfel*, 239 F.3d 698, 703 n. 8 (5th Cir. 2001) (internal quotation marks omitted).[1]  It is worth noting that Plaintiff did not seek any medical treatment for depression until June of 2003.

---

[1] Subsection A requires that Plaintiff demonstrate "medically documented persistence of" various symptoms. Plaintiff claims that he satisfies this requirement because he suffers from a depressive syndrome. To meet the requirements of "depressive syndrome" Plaintiff must meet four further criteria. Plaintiff asserts that he meets eight of the possible nine criteria. However, a review of Plaintiff's medical records do not reflect any evidence of these criteria other than his own infrequent and sometimes contradictory reports beginning in June of 2003. Additionally, the psychiatric review technique conducted by Dr. Charles Lankford found that Plaintiff met only three of the criteria. Tr. 112.

Subsection B requires the claimant to show that his activities have been impaired in at least two of four areas. Plaintiff contends that he satisfies the requirements of three of the four areas of subsection B. However, Dr. Maksymowicz found no difficulties in Plaintiff maintaining concentration, persistence, or pace. Dr. Charles Lankford, Ph.D. reported that "alleged limitations due to symptoms are not fully supported by medical and other evidence." Tr. 123.  Dr. Lankford determined that Plaintiff is mildly limited in the activities of daily living and in maintaining social functioning, that he is moderately limited in maintaining concentration, persistence, or pace and that he has suffered no episodes of decompensation.  Tr. 119. There is no other evidence in the record that Plaintiff experienced episodes of decompensation.  With regard to the marked restriction of activities of daily living, the ALJ cited to Plaintiff's reports that he cared for 14 children (Tr.125) and found that "the evidence suggests that the claimant's limitations in daily activities are by choice rather than due to debilitating physical health impairment." Tr. 19. Additionally, Plaintiff reported that he returned to work in April of 2003 and functioned at that job until he was terminated for infractions unrelated to his alleged depression. Thus, Plaintiff failed to establish two of the four areas as is necessary to meet the B criteria.

Subsection C requires that Plaintiff show that he suffers from a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following. . . ."  Plaintiff presented no objective medical evidence at the time of the hearing that he had suffered from depression for a period of two years. Additionally, during much of the period Plaintiff relies upon to establish his disability, Plaintiff was not on medication for depression. Thus, Plaintiff has failed to establish he met the C criteria.

11

Plaintiff must provide medical findings to support each of the listed criteria and an impairment that does not meet any of the stated criteria even by a slight margin does not qualify for a finding at step three of the evaluation. *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 8 (1990). Other than the examination of Dr. Maksymowicz, who noted that "he struggles with depressive symptoms" Plaintiff points only to his own subjective complaints in support of this claim and not the required medical documentation. Moreover, the medical evidence, properly considered by the ALJ, does not support Plaintiff's contention that he meets the listing for an impairment. The Court finds that the ALJ did not err in determining that Plaintiff did not meet the A, B, and C criteria of Listing 12.04.

Dr. Maksymowicz also reported that Plaintiff's memory, concentration were good and that his thoughts were organized and goal directed. The doctor further reported that Plaintiff had adequate concentration and ability to attend to tasks. Tr. 125-126. Dr. Maksymowicz stated that "this man has a somewhat confusing picture . . . I am also unsure how long these symptoms have been present." *Id.* This equivocal statement is not sufficient to establish that Plaintiff had suffered from an Affective Disorder to the required degree, and suffered from the disorder for the required period.

Moreover, the ALJ's determination is consistent with the opinion of Dr. Charles Lankford, Ph.D., who examined Plaintiff and determined that Plaintiff was only mildly limited in the activities of daily living and in maintaining social functioning, that he is moderately limited in maintaining concentration, persistence, or pace and that he has suffered no episodes of decompensation. Tr. 119.

In social security appeals, the court "does not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Conflicts in the

evidence, are for the Commissioner, not the Court, to resolve. *Id*. The Court finds that the ALJ did not err in determining that Plaintiff did not meet Listing 12.04.

### 2. *Plaintiff's limitations*

Plaintiff next argues that the ALJ erroneously assessed Plaintiff's limitations due to his alleged impairments. The ALJ's assessment of Plaintiff's residual functional capacity is consistent with the evidence in the record and constitutes an appropriate resolution of any conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Plaintiff claims the ALJ erred when he found "no limitation" in Plaintiff's activities of daily living and social functioning , with a "mild limitation" in Plaintiff's ability to maintain concentration. Plaintiff points to the Disability Determination Services form which indicates "mild" limitations in activities of daily living and social functioning and "moderate" difficulties with concentration. Tr. 119.

As stated above, Dr. Maksymowicz reported that Plaintiff's memory and concentration were good and that his thoughts were organized and goal directed. The doctor further reported that Plaintiff had adequate concentration and ability to attend to task. Tr. 125-126. Dr. Lankford found no evidence of episodes of decompensation. Tr. 119. Dr. Lankford also reported that Plaintiff was "capable of understanding, recalling, and performing simple work, interacting appropriately with supervisors and coworkers and adapting to changes in a routine work environment." Tr. 107.

With regard to the ALJ's findings that Plaintiff suffered "mild" limitations in activities of daily living and social functioning, after finding that the Plaintiff's testimony was not credible, the ALJ explained in his determination that "any difference between the medical consultants' functional assessment and the assessment herein are due in part to new evidence and testimony." Tr. 19. The relevant regulation, 20 C.F.R. § 416.927(e), which the ALJ relied on, states:

> Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. . . .(2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity (see §§ 416.945 and 416.946), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

The record evidence shows that the ALJ considered the medical source opinions in determining whether Plaintiff met the Listing of Impairments. Therefore, the ALJ did not err when he made his assessment of Plaintiff's ability to perform the activities of daily living and his ability to maintain social functioning.

Plaintiff makes additional arguments regarding the ALJ's failure to consider the fact that Plaintiff's medications have "severe side effects" including, drowsiness, dizziness, and weakness in the legs, etc. However, there is no evidence in the record that Plaintiff ever reported these symptoms to a medical professional at MHMR or during his stint in jail, or at any time when he was compliant with his doctor's orders. Additionally, there is no evidence in the record that Plaintiff could not perform a job because of these alleged side effects, as he worked from May to June of 2004 while not taking his medication. Plaintiff testified that he was not taking his medication at the time of the hearing because he lost his medical assistance card and failed to renew it – not because of any side effects. The Court finds that the ALJ properly considered the entire record, including Plaintiff's own testimony, in determining his limitations.

In summary, a diagnosis of "depression" alone is not adequate to satisfy a listed impairment. 20 C.F.R. §§ 404.1525(d) and 416.925(d). Additionally, it is well established that an impairment that can reasonably be remedied or controlled by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). Accordingly, the Magistrate Court finds that this argument fails.

### B. Did the ALJ err in assessing Plaintiff's ability to engage in substantial gainful activity?

Plaintiff argues that in assessing whether Plaintiff could return to his past relevant work, the ALJ improperly assumed that Plaintiff's work as a fork lift operator qualified as substantial gainful activity when it did not. As cited by Plaintiff, "past relevant work" is work that claimant has done within the 15 years prior to initial application for Social Security disability benefits that were substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1565. "Substantial gainful activity" is "work that involves doing significant and productive physical or mental duties; and is done, or intended, for pay or profit." 20 C.F.R. §§ 416.910 and 404.1572.

The record shows that Plaintiff earned approximately $3,360.00 from his three-month stint as a forklift operator at Whole Foods Market. Plaintiff argues that this quantity of work does not qualify as substantial gainful activity. The Court finds that, as this work appears to have been for pay or profit and involved performing significant mental duties it qualifies as "substantial gainful activity." However, even if this work did not qualify as "substantial gainful activity," in considering whether Plaintiff could return to performing his past relevant work, the ALJ also determined that Plaintiff could return to his past relevant work as a construction worker. Thus, the consideration of Plaintiff's

work as a forklift operator in the category of available past relevant work was, at most, harmless error. Therefore, even if there was error in considering the forklift operator job – which there was not – any such error would not have required remand. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

Plaintiff additionally claims that the ALJ erred when he failed to consider the side effects of Plaintiff's medications or insomnia in determining that he could return to his past relevant work as a construction worker. This Court has reviewed the record and has found no objective medical evidence that Plaintiff suffered from either insomnia or sleepiness due to his medications. Plaintiff did testify that he knew he was depressed because he had trouble sleeping.  Tr. 269. He then later testified that he sleeps during the day, but not at night when he stays up and watches television.  Tr. 273-74.  Plaintiff testified that Seroquel was making him sleepy, but not Serzone. Tr. 272. Records from prison show that Plaintiff in fact requested Seroquel because he "preferred the Seroquel effect." Tr. 130.  Plaintiff also testified that his medication was helpful to him, but that he had quit taking it once his prescriptions ran out in March, 2004, and he failed to renew his health care card.  Tr. 270-71.

The Court finds that the ALJ properly found that Plaintiff's alleged side effects from his medication and/or insomnia are unsubstantiated by the evidence in the record. Tr.19. The ALJ is not required to pose unsupported hypotheticals of limitations to the Vocational Expert. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Therefore, the ALJ did not err on this basis.

### C.     Did the ALJ fail to properly evaluate Plaintiff's credibility?

Plaintiff's last claim is that the ALJ erred when he determined that Plaintiff's alleged impairments and their impact on his ability to work are not entirely credible. Tr. 18. Various evidence in the record supports the ALJ's findings that Plaintiff's claimed limitations are not credible.

First, the ALJ noted that Plaintiff testified that antidepressants controlled his depression. Tr. 19. With regard to Plaintiff's claims regarding insomnia, his testimony to the ALJ was contradictory, as he testified that he slept all day, even without the benefit of medications. Additionally, Plaintiff reported to MHMR that his sleep and mood improved on Seroquel. Tr. 170. Nowhere in Plaintiff's MHMR records does he report drowsiness due to his medications. Additionally, Plaintiff failed to fill his prescriptions or seek medical treatment beginning in April of 2004. Plaintiff tries to argue that he lost his medical assistance card and was too depressed to follow through with the process of having another card re-issued. However, Plaintiff testified that he worked for a contractor at this time and through June of 2004. As the ALJ stated, "the evidence suggests that the claimants' limitations in his daily activities are by choice rather than due to debilitating physical health impairment." Tr. 19. The ALJ further found that Plaintiff's credibility is limited when he has been noncompliant with his medication and failed to obtain any medical treatment when he had access to medical care. *Id.* Judgment as to credibility is the province of the ALJ. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The Court declines to disturb the ALJ's judgment and finds that the ALJ properly evaluated Plaintiff's credibility as required by Social Security Ruling 96-7p.

Based upon the foregoing, the Court finds that the ALJ's decision was based upon substantial evidence and was based upon an application of the proper legal standards. Accordingly, the final decision of the Commissioner should be AFFIRMED.

## VII.  RECOMMENDATION

The Magistrate Court **RECOMMENDS** that the District Court **AFFIRM** the final decision of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)©); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 1st day of June, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE